MARY DAUSCH, Appellee, *vs.* HARRY B. BARKER *et al.*— (AGNES LUBA *et al.* Appellants.)

*Opinion filed February 24, 1928—Rehearing denied April 10, 1928.*

1. PARTITION—*when affidavit of complainant's grantor may be removed as a cloud.* Statements or affidavits made by a grantor after he has parted with the title are not admissible in evidence to impeach that title, and in a suit for partition an affidavit made and recorded by the complainant's grantor repudiating any and all deeds made by her and claiming title to the premises may be removed as a cloud on the complainant's title where it is shown by the evidence to be without foundation in fact.

2. SAME—*defendants desiring removal of complainant's deed as a cloud must file cross-bill.* Defendants to a suit for partition, desiring to have the complainant's deed removed as a cloud on the title claimed by them, must file a cross-bill for that purpose, and such relief cannot be granted on an answer which does not ask for any affirmative relief.

APPEAL from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding.

ROBERT F. PETTIBONE, for appellants.

EDWARD N. SHERBURNE, and JOSEPH GRANICK, for appellee.

ALBERT SABATH, for Harry B. Barker.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellee, Mary Dausch, filed a bill in the circuit court of Cook county for partition, alleging that she and Harry B. Barker owned the property described in the bill, as tenants in common. Barker and numerous other persons claiming some interest in the property were named parties defendant. The bill alleges that Barker's interest is an undivided one-half, and that the deed by which he took title from Fred Linick recites a conveyance of the fee to the entire property to Barker; that this deed is erroneous and should be reformed so as to show that Barker holds but an undivided one-half interest in the premises. Barker in his answer admits these allegations and consents that his deed be so reformed. The bill sets out that Apollonia Heinle had made and caused to be filed a certain affidavit, by which she attempted to repudiate certain deeds made by her, including appellee's deed, and claimed to own the property; alleges that certain defendants have or claim to have liens in the form of judgments against the undivided one-half interest of Barker; that such liens are alleged to have been created against Barker's interest while the property was owned by his grantor, Linick; that Mrs. Heinle made no effort to enforce her alleged claim of ownership during her lifetime; that she departed this life leaving as her heirs-at-law Agnes Luba, Helen Ziolkowski, Frances Walentarski, Julia Komorowski and Vincent Nowak, appellants here, and leaving a last will and testament, by which the residue

of her estate, after small bequests, was devised to appellants; that at the time she filed the affidavit she had no title to the premises and that her heirs, legatees and devisees have no title; that there are certain trust deeds outstanding, representing large sums of money, which constitute liens on the premises.

Barker answered the bill, admitting the mistake in his deed, admitting the existence of the trust deeds, also certain judgments against his grantor, Linick, but denying that the judgments are a lien on his interest in the premises.

Appellants answered the bill, denying that appellee and Barker own the property as tenants in common or that their immediate grantors had any title thereto; deny that the premises are subject to the trust deeds set forth in the bill; assert that they have no knowledge of any judgments, but aver that if there be such they are not liens on the land; admit the filing of the affidavit by Mrs. Heinle in which she claims ownership of the lot, and aver that on April 16, 1924, when she filed the affidavit claiming ownership, she was the owner of the premises and remained such until the time of her death, and that any deed or deeds appearing of record from her purporting to convey the real estate were obtained by deceit, fraud and misrepresentation; deny that no efforts were made by her to enforce her claim of ownership, and aver that she employed counsel to enforce such claim and was having the matter investigated when she died, and that similar proceedings have been initiated by her heirs and devisees to uncover a conspiracy by which appellee, under the guise of close friendship for Mrs. Heinle, has attempted, with others, to strip her in her lifetime of $80,000 worth of property and leave her penniless; allege that appellants, as devisees under the will, own the property, and aver that the affidavit of Mrs. Heinle is true.

The judgment creditors answered the bill, claiming that their judgments are liens on the interest of Barker in the premises.

The cause was referred to a master in chancery, who found that appellee owns an undivided one-half of the premises, and that appellants, as devisees under the will of Mrs. Heinle, are owners of the remaining one-half. Exceptions were filed to the master's report, and the court entered a decree finding that appellee and Barker are the owners in fee simple, as tenants in common, of equal parts of the real estate in question, subject to three trust deeds referred to in the bill; that the judgments set up in the bill are liens on the interest of Barker; that Mrs. Heinle had no interest in the real estate at the time she filed the affidavit set out in the bill of complaint and that appellants have no right or interest therein; that the affidavit is false and constitutes a cloud on the title of appellee and decrees that the same be removed. Barker's deed was by the decree, and in accordance with his consent, reformed to show that he owns an undivided one-half interest in the premises. The decree directs partition and appointment of commissioners.

Appellants urge as grounds for reversal of the decree the following: (1) That Apollonia Heinle, at the time of the making of deeds by which appellee purports to hold title, was incapable of managing her property and affairs and that the deeds were secured by fraud and deceit and are therefore void; (2) that appellee had full knowledge of Mrs. Heinle's incapacity, and was therefore not entitled to the return of the real estate conveyed by her to Mrs. Heinle in exchange for a one-half interest in the property in question; and (3) that Barker is not an innocent purchaser for value.

The property involved is an apartment building containing eighteen or nineteen apartments, located in the city of Chicago. Apollonia Heinle purchased this property some time prior to 1923. On October 10, 1923, she executed a warranty deed to Paul G. Annes, who on the same day re-conveyed the property to her and Fred Linick as joint tenants. On January 12, 1924, Mrs. Heinle and Linick

executed a warranty deed to Clara Granick, who on January 14, 1924, conveyed the property to appellee and Linick as tenants in common. On February 16, 1924, Linick conveyed by warranty deed a one-half interest in the premises to Harry B. Barker. It appears that the deed to Clara Granick was for the purpose of destroying the joint tenancy in Mrs. Heinle and Linick. The value of this property at the time of these transactions was shown by the evidence to be $90,000. It was, however, subject to three mortgages, amounting to $74,973. The total of the judgments against Linick which became liens on his one-half interest in the property before conveyance by him to Barker amounts to $6279.57. The equity in the property over and above the trust deeds is shown by the evidence to be approximately $15,000.

It will be noted that appellants' answer does not charge that Apollonia Heinle was insane, of unsound mind or mentally incapable of making a deed at the time the deeds were executed. The answer contains no allegation of undue influence or inadequacy of consideration. The only averment in the answer affecting the validity of her deeds is, that "any deed or deeds from her [Mrs. Heinle] of said real estate, or any interest therein, were obtained by deceit, fraud and misrepresentation." The answer contains no averment of acts alleged to be fraudulent or to constitute misrepresentation. The affidavit filed of record against this property by Mrs. Heinle contains the simple statement that she claims ownership thereof, and that any deed or deeds appearing of record from her to the real estate, or any interest therein, were obtained by deceit, fraud and misrepresentation, and that she repudiates any and all such deeds. It appears from the evidence that appellee, at the request of Mrs. Heinle, purchased the latter's one-half interest in the premises by deeding to her a six-apartment building, for which appellee had paid $13,000. The evidence also shows

that a one-half interest in the equity in the premises involved here is not worth $13,000.

Counsel for appellee call attention to the fact that no offer to return the property or its equivalent was made by Mrs. Heinle during her lifetime or by appellants since her death. Counsel for appellants replies that appellee knew that Mrs. Heinle was wholly incompetent and incapable of transacting business when appellee traded the property to her, and therefore she is not entitled to have her property, or its equivalent, returned. It is a sufficient answer to this contention to say that the answer of appellants does not charge that Mrs. Heinle was incapable of transacting business, nor does it charge a fiduciary relationship existing between her and anyone involved in this case. The evidence shows only that appellee was a friend of Mrs. Heinle.

It is further argued that Barker is not an innocent purchaser for value. The record is barren of any evidence of knowledge on the part of Barker of any equities existing, if such did exist, in Mrs. Heinle. He states that he purchased the property of Linick through advice of his counsel and because he thought he might make some money by it. Moreover, the answer does not complain that inadequate consideration was given to Mrs. Heinle at any time.

Concerning the mental condition of Mrs. Heinle, the record shows that on September 11, 1919, she was found insane in the county court of Cook county and on October 8, 1919, was adjudged restored by that court. It appears that Linick lived with her in illicit intimacy, and the testimony of one Frankenstein, an attorney at law, was introduced to tell of certain conversations which he had with Linick, in which Linick told him that he had procured an insanity hearing of Mrs. Heinle, and when he found that he could not get her property in that way he had had her restored. This testimony was admitted over the objection of appellee that Linick was in nowise a party to this proceeding and the testimony was hearsay and not competent to

bind anyone in the case. This objection was entirely sound, and doubtless the chancellor, on consideration of the record, paid no attention to the evidence. George H. Hough, an attorney at law who had been doing investigating in the State's attorney's office but who had offices with counsel for appellants here, also testified to certain conversations in which Linick told him that he lived in illicit relationship with Mrs. Heinle and that she gave him all the interest he had in the property. The same objection was made to this testimony, but it was admitted by the master. It was incompetent. Frankenstein also testified that he considered Mrs. Heinle to be suffering from syphilis, but that at the time he saw her in 1919 she was capable of transacting business, but gave it as his opinion that she had a progressive disease and that she would soon become insane. He was not shown to have any knowledge whatever of physical or mental diseases, and his testimony was entitled to little, if any, weight. Appellant Frances Walentarski testified that her aunt had been unable to see enough to read for about five years. She, however, admitted on cross-examination that a short time before her death her aunt visited her in Milwaukee and that she made the trip alone. This witness is executrix under the will of Mrs. Heinle, and the evidence shows that in the spring of 1924 she came to Chicago to live with Mrs. Heinle, and that shortly thereafter the latter filed the affidavit herein referred to. There is no evidence by any other witness that Mrs. Heinle could not see. Robert F. Pettibone, counsel for appellants in this cause, was called to the stand by appellee and testified that in April, 1924, after the making of these deeds, he had drawn a will for Mrs. Heinle and had signed it as a witness, and that he testified at the time of the probate of the will as to the soundness of mind of the testatrix. On cross-examination conducted by himself he stated that he drew the will because from his somewhat extended acquaintance with Mrs. Heinle he was of the opinion that while she did

not have mental capacity sufficient to make a deed she did have sufficient capacity to make a will. Most of this testimony was immaterial under the issues raised by the answer of appellants, and even if considered does not show mental incompetency on the part of Mrs. Heinle to make a deed.

It is contended that the court erred in removing the affidavit of Mrs. Heinle as a cloud upon the title of appellee. In this there was no error. The affidavit does not refer to any particular deed but is a self-serving statement made by the grantor after the execution and delivery of her deeds to this property. Statements or affidavits made by a grantor after he has parted with the title are not admissible in evidence to impeach that title. (*Illman* v. *Kruse,* 301 Ill. 408; *Delfosse* v. *Delfosse,* 287 id. 251; *Essary* v. *Marvel,* 274 id. 576.) The affidavit was shown by the evidence to be without foundation in fact, and the court did not err in decreeing its removal as a cloud.

Counsel urges that the court erred in not removing the deeds of appellee and Barker as clouds on appellants' title. It is a sufficient answer to say that no affirmative relief is asked in appellants' answer. Such relief cannot be granted in that condition of the record. If appellants desired such relief they should have filed a cross-bill. (Puterbaugh's Chancery Pl. & Pr.—5th ed.—p. 123; *Mott* v. *Danville Seminary,* 129 Ill. 403.) Moreover, the proof does not justify such a decree.

As hereinbefore stated, there are no allegations in the answer charging fiduciary relationship or mental incompetency and no fraud or deceit is attempted to be proved. Much of the testimony admitted by the master was clearly incompetent under the issues in the case and was doubtless not considered by the chancellor.

The record amply sustains the decree of the circuit court, and the decree will be affirmed.

*Decree affirmed.*